## Livingstons *vs.* Livingston.

An estate *upon condition* vests, if the condition be performed in *substance* and *effect:* a *literal* performance need not be shown. Thus, where an estate was given by will to A. with a limitation over to B., upon condition that C. should, by will or otherwise, give to A. the one *equal moiety,* or the *moiety in value* of a certain tract of land; and C. did in fact devise a moiety of such tract to A., but charged the same *contingently* with the payment of certain annuities and legacies, and *absolutely* with the payment of one specific annuity, *it was held,* that C., having by his will, independent of the devise to A., created a fund for the payment of annuities and legacies, and it appearing that such fund was amply sufficient for the purpose, that the condition had been performed in substance and effect, and that the estate of A., in the premises first devised, had ceased. So in relation to the annuity *absolutely* charged, IT WAS FURTHER HELD, that if not included in the annuities and legacies for the payment of which the fund

NEW-YORK,
May, 1836.

Livingstons
v.
Livingston.

was created, the *condition* must still be held to have been performed in substance and effect; it appearing that by the will of C. other property, both real and personal, to an amount greatly exceeding what would be sufficient to satisfy such annuity, had been given to A.

THIS was an action of ejectment, tried at the Columbia circuit in June, 1833, before the Hon. JAMES VANDERPOEL, one of the circuit judges.

The plaintiffs claimed to recover a certain portion of lot number *four*, in the manor of Livingston, as the heirs at law of Henry Livingston, the son of John Livingston of Oak-Hill, in the same manor. John Livingston, by his will, devised the premises in question to his son *Henry* in fee ; but declared in and by the same will, that if Henry, the brother of the testator, should, (as he had solemnly engaged he would do,) by his last will and testament, give to *Henry*, the son of the testator, in fee simple, the *equal moiety*, or the *moiety in value*, of great lot number *three* of the manor of Livingston, then the devise of the premises in question to *Henry*, should cease and determine, and the same should go to *Herman*, another son of the testator in fee. John Livingston died in October, 1822, and his son Henry went into possession of the premises in question. On the 21st March, 1823, Henry Livingston, the brother of John Livingston, made his will, whereby he devised lot number *three* to *Henry*, the son of John Livingston, and to *Henry W.*, the son of his nephew Henry W. Livingston ; and to designate the portions of the lot which the devisees should respectively take, he appointed, in and by his will, three commissioners to make partition and divide the lots into two equal parts, having due regard to quantity and quality, by running a line north and south through the same ; and in the valuation of the lot, he directed that the commissioners should proceed without reference to any lease or other conveyance made of any part of the lot by himself or his ancestors, and without regard to the rents reserved or the duration of any estate granted by any such leases or conveyances to the tenants or any other person or persons. He further directed the commissioners, after completing the partition, to cause a map and field book of the partition to be made and entered of record, declaring such partition to be final and conclusive

upon the devisees and their heirs ; and after such partition, 1
directed that the portion lying to the *eastward* of the line to
be established by the commissioners, should be the share and
part of *Henry,* the son of John Livingston ; and the portion
lying to the *westward* of such line, should be the portion of
*Henry W.,* the son of Henry W. Livingston. Henry Liv-
ingston, the last mentioned testator, died shortly after making
his will ; and *Henry,* the son of John Livingston, entered into
possession of his portion of the lot number *three,* devised to
him by his uncle, Henry Livingston, and remained in pos-
session until his death in 1828, taking the rents and profits
of the same. When *Henry* went into possession of the por-
tion of lot number *three,* devised to him by his uncle, *Herman*
went into possession of the portion of lot number *four,* under
the limitation over in the will of his father, John Livingston,
and remained in possession when this suit was commenced
by the *widow* and *children* of his brother Henry, who claimed
the same on the ground that *the condition on which he was to
take the property had not been fulfilled,* alleging that the portion
of lot number *three,* given by the testator, Henry Livingston,
to his nephew, Henry Livingston, was not an *equal moiety,*
or a *moiety in value,* of such lot. In support of this allegation,
they referred to various devises and bequests in the will of
Henry Livingston, by which it appeared that he had devised,
1. 120 acres, part of lot number *three,* to his nephew, James
S. Livingston in fee ; 2. A house and a lot of an acre of
ground, part of said lot number three, to one *Jonas Bruce* for
life ; 3. Five hundred acres of land, called the *Dolph* and
*Coon* farms, also part of lot number *three,* to three individu-
als for their respective lives ; 4. That he had bequeathed an
annuity of $250 to his sister, Mrs. Patterson, and *specially
charged the same* upon the eastern portion of lot number *three,*
devised to his nephew Henry ; and, 5. That he had given
and bequeathed legacies to large amounts, and charged them
specifically upon lot number *three,* in case the funds allotted
for the satisfaction of such legacies should prove insufficient.
To rebut which grounds thus assumed by the plaintiffs, it was
proved that the 120 acres devised to James S. Livingston,
the house and lot devised to Bruce, and the *Dolph* and *Coon*

farms, all lay on the extreme *west part* of lot number *three*. The defendant also referred to various other provisions contained in the will of Henry Livingston, by which it appeared, 1. That the testator devised to his nephew, Henry, in fee, an ore-bed, situate at Salisbury, in the state of Connecticut, and all the stock upon his farm and at his works at *Ancram*, together with all such tools and implements as at his decease should be in use in and about his furnace and forges at *Ancram*; 2. That by a residuary clause he gave all the *rest and residue* of his estate, real and personal, not otherwise by the will disposed of, to his *executors in trust*, for the *payment of the legacies* given in and by the will; and 3. That after the payment of the legacies, the settlement of his estate, and the taking effect of the several devises, made by his will, he gave all the *rest and residue* of his estate, real and personal, to *Henry*, the son of his brother John, and to *Henry W.*, the son of his nephew Henry W., in equal parts, share and share alike. And 4. The defendant *offered to prove*, 1. That the ore-bed specifically devised to Henry was worth $40,000; 2. That the *residuary* personal fund amounted to at least $100,-000 over and above paying all legacies, annuities, &c. 3. That the property given and bequeathed to Henry, by the will of his uncle, was worth double in value the property given to him by the will of his father. All which offers of evidence were objected to by the plaintiffs' counsel and sustained by the judge, who charged the jury that the plaintiffs were entitled to recover; and the jury accordingly found a verdict for the plaintiffs. The defendant moved for a new trial.

*A. L. Jordan & J. A. Spencer*, for the defendant.

*J. C. Spencer*, for the plaintiffs.

*By the Court*, NELSON, J. The limitation to *Herman Livingston* of that portion of lot No. 4, conditionally devised to his brother *Henry*, is valid and effectual as an executory devise, and the only material and difficult question in the case is, whether the contingency has happened; or, in other words, whether the condition has been performed by Henry, the

NEW-YORK,<br>May, 1836.<br><br>Livingstons<br>v.<br>Livingston.

*uncle,* upon which the estate was to go over. The intent of the testator, John, the *father,* who prescribed the condition, is to govern in construing it according to the universal rule applicable to the interpretation of wills. It is said in the books, that conditions, the performance of which are to *create* an estate, should receive a liberal construction, and if performed as near to the intent as possible, it . will be sufficient ; and that those which *defeat* an estate are to be construed strictly. 2 *Co. Litt.* 1 *u.* 2 *Cruise, tit. Cond. ch.* 2, §1, *p.* 34. 5 *Viner, tit. Condition, Q. a. pl.* 25. These rules, however, so far as they may be supposed to influence the mind in endeavoring to arrive at the true intent of the condition, and in pronouncing upon the rites of the respective parties, may be said to neutralize the force of each other, because the performance of the condition comes within both ; it *defeats* and *creates* an estate at the same instant. It may however be safely assumed that if the performance is according to the substance and effect of the condition required by the testator, it is sufficient. 5 *Vin. tit. Cond. let. Q. a.* Many examples are given in illustration of the position. One is as follows : if the condition be to make a feofment, a conveyance by lease and release is good. 6 *T. R.* 722.

Upon looking into the will of the testator, John, it will be seen that he anticipated the difficulty that has actually occurred in the case, and guarded against it, so far as it was under his control. If he has not been entirely successful, he has at least, I think, made manifest his own meaning and wishes, and thus far cleared the point of embarrassment. The condition prescribed to the devise of part of lot No. 4, to Henry, is clearly and specifically stated. " If," he says, " my said brother shall, in conformity to his said declared intention, give and devise, or otherwise assure to my said son Henry, in fee simple, the one equal moiety of the said great lot No. 3, that from and immediately after my said son Henry shall come into the seisin and possession of the same, then the devise of that part of the said great lot No. 4, herein before given, and made to my said son Henry, shall be null and void, &c.; and from and immediately thereafter, I do give and devise that part of the said great lot No. 4, herein before given to my said son

Henry, unto my said son Herman," &c. Again: after reciting that a difficulty might arise in determining what should be considered *as a moiety* of the said great lot No. 3, upon which the estate of Henry was to cease, he " directs," for the purpose of obviating all disputes in the matter, " that the will, pleasure and declaration of my said brother Henry, to be contained in his last will and testament, or any other writing to be by him executed, shall be conclusive upon this question ; that is to say, if my said brother H. shall declare, in manner aforesaid, that such part of the said great lot No. 3 as he shall or may devise, or otherwise give to my said son H., in fee simple, shall be *deemed* or *called* by him to be the equal moiety of the said great lot No. 3 ; or if he shall, by deed, will or otherwise actually give to my said son H., in fee simple, the moiety, in value of the said great lot No. 3, or a greater proportion thereof, *then* the said devise over to my said son Herman shall take effect," &c. A *proviso* is then added, that Henry shall not be divested of his estate in great lot No. 4, until he comes into the actual seisin and possession of " the said *moiety*, or *other greater part of great lot No. 3.*" It was said, on the argument, and it is embraced in one of the points of the defendant, that according to the second alternative, above declared, if *other property*, together with part of lot No. 3, devised to Henry, by his uncle, amounted, " in value," to an equal moiety of the said lot, that then the condition was satisfied ; especially, if such other property consisted of real estate, in fee simple. This, I apprehend, is a mistaken view of the meaning of the will. It should be borne in mind that the difficulty the testator was endeavoring to obviate, or settle, was an anticipated dispute about what should be considered a moiety of great lot No. 3, which his brother had engaged to give to his son Henry ; and the tests were prescribed with a view to the accomplishment of this purpose. Different modes are laid down, by which the moiety might be ascertained, and the intent of the condition complied with. The language of the clause also seems to me to be unambiguous, and necessarily to limit the terms "moiety in value," to " part and parcel" of lot No. 3. It is to be, " in fee simple, the moiety, in value of *the said* great lot," and not the value of a moiety of the same. Besides, the

*proviso* is too explicit to leave any doubt upon the clause. By that, Henry is not to be divested of his estate in No. 4, until he comes into the seisin and possession " of *the moiety or other greater part of great lot No. 3, as herein before mentioned;*" obviously referring to the clause under consideration, and the different tests prescribed by the testator. The condition, then, I think it must be admitted is, that Gen. Henry Livingston should devise, or otherwise assure the fee simple of a moiety in value of the said great lot No. 3, to Henry, the son of the testator. Has this condition been performed according to any of the rules prescribed by the testator *John,* the father of Henry and Herman ? I do not think that Gen. Henry has made any *declaration* in his will, that the part devised is to be deemed a moiety ; nor has he *called* it a moiety of great lot No. 3, within the reasonable purport and meaning of the clause in this respect. That clause, no doubt, contemplated some formal provision, or deliberate action upon the subject; but I am of opinion that he has *actually devised* to Henry, the son of John, a moiety in value of the lot, in fee simple. He devised it in the first instance, by name and boundary to *him* and to *H. W. L.,* in fee, and then provided for a division of the same into two equal parts, having due regard to quantity and quality, by a line running through the lot north and south. In running this line, the commissioners were directed to proceed in the valuation, without " reference to any lease, or other conveyance made, or executed, of any part or parcel by him, the said Henry, or any of his ancestors ; and without regard to the rents reserved, or duration of the estates granted by such leases or conveyances to the tenants, or any other person." After the division thus to be made, the commissioners were to cause a map and field book to be made of it, and entered of record in the clerk's office; and such division, it was declared, should be final and conclusive upon all the devisees, their heirs and assigns. The part lying *east* of the line is then, in the most formal manner, devised to *Henry,* in fee, and that west of it to *Henry W.,* in fee.

It is supposed, by the counsel for the plaintiff, that there are two conclusive objections to this view of the case. *First.* It is said that the *Bruce* lot, of one acre, the *Dolph* and *Coon*

farms, of 500 acres, devised to third persons, for life, without rent, and the 120 acres devised in fee to I. L. Livingston, out of lot No. 3, diminish the number of acres, or quantity of the lot, and postpone the occupation and enjoyment of it, and thereby, when taken into account, on the division by the commissioners, reduce the part allotted to Henry below a moiety in value, in fee. And *second.* That the legacy to Mrs. Patterson expressly charged upon the money given to Henry, and the contingent charge of a moiety of the legacies to *E. J. P.* and *C. A. P.*, and also to the three colored females, Nancy, Betsy and Jenny, so diminish the quantity of interest in the estate of Henry as to prevent a moiety in value, in fee, passing to him by the devise. As to which I observe, *First.* That it is in proof that those four farms or lots are situate in the extreme *western* part of the great lot No. 3, and of course fall within the part devised to Henry W. Livingston; and as has already appeared, from the will, the commissioners were to disregard all leases, or other conveyances made by the testator or his ancestors, and were to divide the entire lot. As to the *Bruce* lot, and the *Dolph* and *Coon* farms, there is not the slightest intimation that they were to be excepted out of the division of the lot, though referred to and devised, after the division was directed to be made. The exception following the devise of the 120 acres in fee also, I think, implies that all these lots were to be deemed a part of great lot No. 3, in the division of it between the two devisees. After devising it the testator adds, "As this farm is a part of the aforesaid great lot No. 3, and is hereby devised in fee, I of course except this out of the devise herein before made of said great lot No. 3." I am aware that it is possible that the testator Gen. Henry, intended, by this exception, to take the 120 acres out of the devise of great lot No. 3, before the division thereof between the two devisees, and if so, the lot would of course be reduced that number of acres, and the moiety of Henry would be less 60 acres; and it may be conceded that such an interpretation might be given to the clause upon plausible grounds; but after the best consideration I have been able to give it, I am led to a different conclusion. The testator had before directed,

with great particularity, the division of the whole lot into two equal moieties, quantity and quality considered; and all leases, and every other species of conveyance, were to be overlooked, and the duration of the estates to be disregarded. The line was to be marked, field book and map made and recorded, and the division to be conclusive upon the parties; and then a formal devise of the *east* half follows, to one of the devisees, and of the *west* half to the other. Thus vesting in each a general and distinct estate, in their respective moieties. When, therefore, the testator afterwards devised the 120 acres in fee to J. S. L., lying in that part of the lot before devised to H. W. L., it was reasonable that he should make the exception mentioned; otherwise the two clauses would have been repugnant. This view seems to me to afford a natural and rational exposition of the clause. The *executors* are directed to lay off and locate the 120 acres, so as to include the dwelling-house of J. S. L., but the *commissioners* empowered to make partition had nothing to do with it; and we in vain look for any clause or intimation in the will requiring or authorizing them to exclude it, or any other piece or parcel of the great lot, in making the division. If the testator had intended to except it out of the *division*, as well as out of the *devise*, he would have said so; especially, after the specific direction already given to the commissioners: enjoining upon them to make the valuation, without reference to leases, or other conveyances. He meant to cause the entire lot to be divided without regard to the manner in which any part of it was held by the tenants, or other occupants. Assuming, no doubt, that a division by the line designated, quantity and quality alone considered, would be just and equitable between the devisees.

*Secondly.* Though the *literal terms* of the condition have been fully complied with according to the foregoing view, yet as we are bound to look to its *substance* and *effect* upon the rule of construction already referred to, we admit the performance fails if the estate in fee of the moiety is encumbered by *annuities* and *legacies* so as seriously to diminish the value of it. *Contingent charges*, however, upon this rule of construction should be laid out of consideration, if it is affirmatively shewn that they will not with reasonable certainty fall upon

the estate. A literal or *prima facie* performance being established, it would seem to devolve upon those disputing it, to produce the evidence repelling a substantial performance. A remote possibility of a charge, if sufficient for this purpose, may undoubtedly be rebutted. It may or may not affect the interest or value of the estate, and therefore necessarily under the control of the facts of the particular case. The funds of the testator may be so large and ample, that the contingent charge of the legacies and annuities in this case would not, in the market, or in fact in the slightest degree, diminish the value of the moiety. This was asserted to be the situation of the funds of the estate in this case, and proof of it was offered by the counsel for the defendant. The evidence was proper; and if the fact could be established, looking at a substantial performance of the condition upon which the estate of the defendant depends, I am of opinion it ought to have been received.

There is more difficulty in respect to the annuity of $250 to Mrs. Patterson, it being charged in express terms on the moiety of the defendant. There is, however, some doubt whether this charge should be considered otherwise than in aid of the estate, real and personal, not otherwise specifically disposed of by the will. The residuary clause is as follows : " I give and bequeath all the rest and residue of my estate, real and personal, after my said estate shall be settled and my devises herein mentioned take effect, and after my legacies herein before given are satisfied and *annuities paid,* then such *rest and residue* of my said estate I give, devise and bequeath to the before named Henry Livingston and Henry W. Livingston, in equal parts, share and share alike." The only annuities given are to Mrs. Patterson and the three colored females, and the clause must of course refer to all or some of them. I am aware it may be said, with some propriety, that it was intended to refer to the latter, as they were to be satisfied out of the fund not specifically disposed of ; still no discrimination is made between them, and, if important, I think it might very well be maintained that the testator intended to include all of them. As however this residuary fund is given to the two devisees charged with the annuities

NEW-YORK,  of Mrs. Patterson, it is not very material whether they are
May, 1836.  deducted before or after it comes into their hands.  The effect
Livingstons  as to their interest is exactly the same.  It was intended that
v.  this residuary fund should be first exhausted before the real
Livingston.  estate charged should be liable—then this annuity falls with-
in the view before taken of the contingent charges upon it;
and if the fund is sufficient, the moiety is unaffected.  I am,
however, disposed to take still broader ground in respect to
this annuity, and to say, that even assuming it to be the
intent of the will of Gen. Henry, that the moiety given
to his nephew Henry should be exclusively chargeable with
it, if the other property devised by him to Henry is suffi-
cient to cover it, the condition has been satisfied according
to its substance and effect, and the fair and reasonable mean-
ing of the will of John Livingston.  Has not Henry receiv-
ed the fee simple of the moiety in value of lot No. 3—the
condition required?  This is indisputable.  But it is said
the annuity of $250 so far in effect diminishes the interest
and value of the fee.  This I admit, and unless paid, it must
be taken out of the estate; but if Henry has otherwise, re-
ceived from his uncle more than sufficient to pay it, is not the
inference a fair one that he has in effect received the moiety
in fee?  He has the legal title, and there is an equivalent
against the encumbrance.  No one, I think, would deny the
soundness of this conclusion, if Gen. Henry had directed
these funds to be applied to the extinguishment of the charge.
In judgment of law, the estate would then be free and unin-
cumbered, as much so as if actually applied.  Looking at the
whole transaction, and the plain meaning of the father of
Henry, this direction does not seem to me important.  The
gift of the fund from Gen. Henry, its sufficiency for the pur-
pose, and the ability to apply it or not, are the material facts.

Taking into view all the devises and bequests to *Henry* in
the will of his uncle, all the property there transferred to and
vested in him, and assuming what was offered to be proved,
that these funds were ample to cover the annuity, it may
with confidence be asserted that Henry has received, and his
children now actually enjoy, a moiety in fee of lot number
*three*, within the meaning of his father's will.

New trial granted.